WILLIAM S. STEVENS & others *vs.* JONATHAN C. STEVENS & others.

By the statute of frauds, (Rev. Sts. *c.* 59, § 29,) an oral license to erect and continue a mill dam on one's land is of no legal validity, as against a subsequent grantee of the land.

S. gave to J. an oral license to erect and continue a mill dam on S.'s land, and to dig a ditch, through said land, to convey water to a mill that J. was about to build on his own land: J. erected the dam and dug the ditch, and afterwards erected the mill, and continued them during the life of S.: After S. had granted said license, he conveyed his land to M., without any reservation: J. continued the dam and ditch, after the decease of S., for the purpose of working the said mill, and M. requested him to remove the dam and fill up the ditch, and, upon J.'s refusal so to do, M. attempted to remove the dam, and tore down a part of it, and J. forcibly interposed, prevented M. from proceeding further, and repaired the injury so done to the dam by M.: M. thereupon filed a bill in equity, praying that J. might be enjoined and prohibited from any longer continuing the dam, which was alleged to be a nuisance, and that the same might be ordered to be abated: On an issue framed and submitted to a jury, they found that the dam was a nuisance. *Held,* that M. was entitled to a decree for an abatement of the nuisance, and for a perpetual injunction against J., to prevent its renewal. *Held also,* that J. was not responsible for any acts done in pursuance of the license before it was countermanded, and therefore was not liable to pay any expenses incurred by M. in removing the old dam; but that he was liable for building a new dam or repairing the old one, after the license was countermanded, and that M. was entitled to have the same abated at the expense of J.

THE plaintiffs alleged, in a bill in equity, that Jonathan C. Stevens, one of the defendants, in 1836, entered upon certain land in Sheffield, then owned by Stephen Stevens, since deceased, said Jonathan C. having no estate, right or interest in said land; and under a pretence of a parol license from said Stephen, said Jonathan C. erected a dam across a stream of water running through said land, and thereby raised the water of said stream for the alleged purpose of working certain mills which said Jonathan C. afterwards erected on his own land, below said dam; that said Stephen, on the 8th of March 1840, by his deed of that date, conveyed all his land in Sheffield, including that on which said dam was erected as aforesaid, to Mary Sumner, one of the plaintiffs, to hold in fee simple, without any reservation whatsoever touching or concerning said dam; that after said conveyance to said Mary, the said dam became ruinous, and was in part torn away

whereupon the said Jonathan C., without leave or license, and without any right whatever, wrongfully went upon said land, and wrongfully constructed an addition or wing to said dam, thereby stopping the water of said stream, creating a nuisance, and doing great mischief to said Mary's land: That said Jonathan C. afterwards conveyed all his real estate in Sheffield, including the mills aforesaid, and all the incidents and appurtenances thereto, to Augustus E. Fuller, Ephraim Dixon and Hubbell Smith, the other defendants, by deed dated April 21st 1843: That said Mary, on the 29th of April 1843, gave written notice to said Jonathan C., who was then wrongfully maintaining said dam, that she objected to his maintaining or having a dam on said land, and made written request to him to take down said dam; and afterwards, in May 1843, caused said written notice and request to be served on said Fuller, Dixon and Smith, the other defendants, and also gave them notice that she objected to their continuing or having any ditch from such dam, across her land to their saw mill, (being one of the mills aforesaid,) and furthermore requested them to take down said dam and to fill up the ditch through which they conducted water across her land to said mill: That said Mary, on the 30th of May 1843, by her deed of that date, released, quitclaimed and conveyed one undivided half of the land, so as aforesaid conveyed to her by Stephen Stevens, to William S. Stevens and Hiram C. Stevens, the other plaintiffs; and that the said Hiram, on the 31st of said May, entered upon that part of said land on which said dam was erected as aforesaid, and abated a part of said wing or addition thereto; and that, while he was so abating said dam as a nuisance, the said Jonathan C. and said Fuller, with divers other persons, entered upon said land, and violently assaulted and beat said Hiram C., and wrongfully drove him from said dam; and that said Jonathan C. afterwards, with divers of his workmen, and with the aid and encouragement of the other defendants, went upon said land and reconstructed that part of said wing which had been abated as aforesaid, and caused said dam, with all its wings and additions,

to exist from that time to the time of the filing of this bill, working a nuisance and annoyance to the plaintiffs; and that said Fuller, on the 20th of August 1843, and on divers subsequent days, with the aid and encouragement of the other defendants, wrought on said dam, repairing, rebuilding and reconstructing the same, without any lawful right or claim. Wherefore the plaintiffs prayed that the defendants should be enjoined and prohibited from any longer keeping up and continuing said dam and the nuisance thereby occasioned to the plaintiffs, and that the same might be ordered to be abated and removed, and that the court would make and award all such judgments, orders and decrees, and do all such other acts, as might be necessary in the premises.

The answer of Jonathan C. Stevens alleged, that on and before the 6th of May 1836, and for a long time after the erection of said dam and the making of said ditch, Stephen Stevens was the owner of a part of the land over which said ditch was afterwards made, and of the principal part of the land on which said dam was erected, and that said Jonathan C. was the owner of the land immediately adjoining, to which said ditch was afterwards made : That said Stephen proposed to said Jonathan C., that the said Jonathan C. should erect on his said land a saw mill and other mills, and, to induce him to erect the said mills, and especially a saw mill, "said Stephen stated to and assured said Jonathan C., that he should, at all times, have the full liberty and entire right to enter upon said Stephen's premises, to dig and make a ditch, and to erect said dam, to repair and keep the same in good condition for the operation of his said mill and machinery ; and that the said Jonathan C., relying on the good faith, honor and integrity of the said Stephen, did thereupon enter upon the said premises of said Stephen, with said Stephen's full knowledge, consent and approbation, and, by the leave and license of the said Stephen to him for that purpose first given and granted, dug and made said ditch, and erected said dam, and also afterwards, from time to time, during the life of the said Stephen, and before the plaintiffs had or claimed to have any interest

in said premises, entered on said premises, to repair said ditch and dam, with the same full and entire knowledge, consent, approbation, leave and license of the said Stephen;" and afterwards erected on his, the said Jonathan C.'s, said land, the saw mill contemplated by said Stephen, as well as other machinery to be propelled by the water diverted to the same by means of said ditch and dam, at an expense of four thousand dollars; all which would be wholly lost, if the prayer of the plaintiffs' bill should be granted: That said Jonathan C. continued in the peaceable occupancy of said ditch, dam and mill, until the death of said Stephen, with his full consent and approbation, and in pursuance of their original understanding and agreement, and of the said leave and license of said Stephen, and until the plaintiffs entered upon, and in part destroyed, said dam; when the said Jonathan C., at great expense, repaired the same, as he well might: That the defendants, and especially the said Mary, were at all times fully cognizant of the aforesaid arrangement between said Jonathan C. and said Stephen, respecting said dam, ditch, and mill, and of all that was done under it, and of the rights of the parties therefrom arising; and that neither said dam nor ditch worked either hurt, damage or annoyance to the plaintiffs' said premises, or to the plaintiffs, or was a nuisance.

Two issues were framed, by order of the court, and were submitted to a jury; and by their verdict it was found, *first*, that the said dam had been erected and continued without any license *in writing* from the owner or owners of the land on which the same was erected; and *secondly*, that the said dam was a nuisance.

*Sumner & Byington*, for the plaintiffs.

*Bishop & Porter*, for the defendants.

This case was decided at September term 1847.

WILDE, J. The question now submitted to the decision of the court is, whether a *parol license*, from Stephen Stevens to Jonathan C. Stevens, would in law or equity justify the continuing of the dam, after the purchasing of the land by the plaintiffs. The authorities are conflicting, as to the legal

effect of a parol license to do any act on the land of another. In the case of *Tayler* v. *Waters*, 7 Taunt. 374, and 2 Marsh. 551, it was decided that a beneficial license to be exercised upon land might be granted without deed, and without writing, notwithstanding the statute of frauds. Several cases were cited in support of that decision; one of which is *Winter* v. *Brockwell*, 8 East, 308, in which a license had been given to the defendant to put a sky-light over an open area above the plaintiff's window, which area belonged to the defendant; and Lord Ellenborough decided that the license of the plaintiff having been acted upon, and expense having been incurred, it could not be recalled without offering to pay all expenses incurred under it. A similar decision was had in the case of *Liggins* v. *Inge*, 5 Moore & Payne, 712, and 7 Bing. 682; but the acts complained of, in both of these cases, were done on the land of the defendants, over which the plaintiffs had only an easement, which, it was held, might be relinquished without deed, and without writing. In the latter case, Lord Tindal says, " there is nothing unreasonable in holding that a right which is gained by occupancy should be lost by abandonment." These decisions are founded on the distinction between the waiver and extinguishment of an existing easement, by parol, and the creation of an easement *de novo.* A distinction is also made, in some of the cases, between a personal privilege, which is not assignable, and an easement carrying an interest in the land. These distinctions are somewhat subtle, but are not material in the present case. See 3 Kent Com. (3d ed.) 452.

The defendants claim a permanent interest in the plaintiffs' land, and this claim has been maintained by force, against the will of the plaintiffs; and there is no case in which it has been decided that such an interest can be created by parol. Such a decision would be against the express language of the statute of frauds.

In the case of *Wood* v. *Lake*, Sayer, 3, it was decided by a majority of the court, that a parol agreement, granting a license to stack hay on the land of the grantor for seven

years, was a valid contract, notwithstanding the statute of frauds. This decision, Mr. Sugden says, "appears to be in the very teeth of the statute which extends generally to all leases, *estates and interests.*" Sugd. Vend. (6th Amer. ed.) 100. It is said in that case, that "the agreement was only for an easement, and not for an interest in the land." But the true ground of the decision appears to be, that the agreement was not within the words of the statute, not being an agreement for any "uncertain interest in land." If this was the ground of decision in that case, it would not be applicable to the provision in our Rev. Sts. *c.* 59, § 29, which is express, that "all estates or interests in lands, created or conveyed without any instrument in writing, signed by the grantor or by his attorney, shall have the force and effect of estates at will only ; and no estate or interest in lands shall be assigned, granted or surrendered, unless by a writing signed as aforesaid, or by the operation of law." But it is perfectly well settled, in England, that no incorporeal right, in the nature of an easement, can be created or conveyed by a parol agreement ; although a parol license may be an excuse for a trespass, till such license is countermanded ; and that a freehold interest can be created or conveyed only by deed. The question was very fully considered in the case of *Hewlins* v. *Shippam*, 5 Barn. & Cres. 221, and 7 Dowl. & Ryl. 783. In that case, it appeared, by the pleadings, that the defendant had given a parol license to the plaintiff to construct a drain through the defendant's yard, and to use the same as a means of escape for foul and waste water from the plaintiff's premises, and that the defendant afterwards, and after the license had been acted upon and executed, and the drain constructed, revoked his license, and stopped up the drain ; and it was held that he had a right so to do, as the right claimed by the plaintiff was an easement and incorporeal right, which lay in grant, and could not be created by parol. The same principle is laid down in sundry other cases. 4 M. & S. 562. 5 Barn. & Cres. 875. 2 Adolph. & Ellis, 696. 4 Mees. & Welsb. 538. Addison on Contracts, 88.

In *Cook* v. *Stearns,* 11 Mass. 533, it was decided by this court, that a permanent right to hold another's land for a particular purpose, and to enter upon it at all times, without his consent, is an important interest, which ought not to pass without writing ; and that by *St.* 1783, *c.* 37, § 1, all interests in land, whether certain or uncertain, were but estates at will, unless the evidence of them existed in deed or writing. This decision is fully approved in the case of *Mumford* v. *Whitney,* 15 Wend. 384, where the cases are ably reviewed and discussed by Chief Justice Savage. The same decision is approved also by Williams, C. J. in *Prince* v. *Case,* 10 Connect. 375, who ably considers the cases and the principle on which they are founded. And in Maine, the case of *Seidensparger* v. *Spear,* 5 Shepley, 123, was decided on the same principle. We think it indeed very clear on the authorities, and on the express language of the Rev. Sts. *c.* 59, § 29, that the defendants' claim of right to continue their dam, and to flow the plaintiffs' land, cannot be maintained.

As to the objection that this court, as a court of equity, ought not to interfere, but to leave the plaintiffs to their remedy at law, we are of opinion, that the plaintiffs' right being fully established, they are entitled not only to the abatement of the nuisance, but to a perpetual injunction to prevent its renewal, and thereby to suppress multiplicity of suits and oppressive litigation ; especially as the defendants have undertaken to maintain their supposed right by force, whereby the plaintiffs have been for a long time disturbed in the enjoyment of their just right of property.

This may be a hard case for the defendants, if, as they aver in their answer, their mill would be rendered useless by the removal of the dam in question ; but this would be their misfortune, as they do not appear to have any legal or equitable claim on the plaintiffs for compensation. Under the license from Stephen Stevens, the defendants have, for nine or ten years, as alleged in the bill, enjoyed the privileges allowed by the license ; and they are not responsible for any acts done by them, in pursuance of the said license and permission,

22 *

before the same was countermanded by the plaintiffs. They are therefore not liable to pay any expenses for removing the old dam; but for building a new dam, or repairing the old dam, after the license was countermanded by the plaintiffs, we think the defendants are clearly liable, and that the plaintiffs are entitled to have the same abated at the expense of the defendants.